08 CV 3545

JUDGE CASTEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
CITIGROUP GLOBAL MARKETS REALTY CORP.,  :   Civil No.:
:
:   **NOTICE OF REMOVAL**
Plaintiff,                  :
- against -                                     :
:
:
ACCREDITED HOME LENDERS, INC.,          :
:
:
Defendant.                  :
-----------------------------------------------------------------X

TO THE JUDGES OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK:

PLEASE TAKE NOTICE that Defendant ACCREDITED HOME LENDERS, INC. ("Accredited"), by and through its attorneys, Jenner & Block LLP, pursuant to 28 U.S.C. §§ 1441 and 1446, hereby removes this action from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York on the following grounds:

1. On March 14, 2008, an action was commenced in the Supreme Court of the State of New York, County of New York, entitled *Citigroup Global Markets Realty Corp. v. Accredited Home Lenders Inc.*, Index No. 600765/08, (the "State Court Action"). Accredited was served with a Summons and Complaint in the State Court Action on the same date. Copies of the Summons and Complaint are annexed hereto as Exhibit A.

2. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) since it was filed within thirty (30) days of service of the Summons and Complaint which provided the basis for removal of the State Court Action to this Court.

3. The State Court Action asserts claims against Accredited for breach of contract, unjust enrichment, fraudulent inducement, and trespass to chattels. The United States District Court for the Southern District of New York has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) by reason of the diversity of the citizenship of the parties:

   a. Based upon allegations in the Complaint filed in the State Court Action, plaintiff Citigroup Global Markets Realty Corp. ("Citigroup") is a New York corporation with its principal place of business in New York City, New York.

   b. Accredited is a California corporation with its principal place of business in San Diego, California.

4. The Complaint makes evident that the amount in controversy in this action exceeds the sum of $75,000, exclusive of interest and costs, as Citigroup seeks, *inter alia*, to compel Accredited to repurchase from Citigroup certain "Subject Assets," which as defined by the Complaint are a "significant number of the mortgage loans and other assets transferred from Accredited to Citigroup" on or about March 15, 2007 having then an "aggregate unpaid principal balance of approximately $2,769,000,000." Complaint ¶ 10 and Prayer For Relief (3). Accordingly, based on Citigroup's Complaint, it is Accredited's good faith belief that the aggregate repurchase price of the mortgage loans in controversy well exceeds the jurisdictional threshold of $75,000.

5. A copy of this Notice of Removal will be filed promptly with the Clerk of the Supreme Court of the State of New York, County of New York, as required by 28 U.S.C. § 1446(d).

6. Accredited will give written notice of the filing of this Notice of Removal promptly to Citigroup as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendant Accredited respectfully requests removal of this action from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York.

Dated: April 11, 2008

Respectfully submitted:

By: *(signature)*
Richard F. Ziegler
Alex Lipman
Brian J. Fischer
Elisabeth Genn
JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022

*Counsel for Defendant Accredited Home Lenders, Inc.*

cc: Patrick J. Boyle, Esq.
    William M. Cooney, Esq.

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| CITIGROUP GLOBAL MARKETS REALTY CORP., <br><br> Plaintiff, <br><br> -against- <br><br> ACCREDITED HOME LENDERS, INC., <br><br> Defendant. | Index No.: 600765/2008 <br> Date Filed: March 14, 2008 <br><br> **SUMMONS** |

TO: Accredited Home Lenders, Inc.
    15090 Avenue of Science
    San Diego, California 92128
    Phone: (858) 676-2100
    Facsimile: (858) 676-2170

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action, or to serve a notice of appearance, if the complaint is not served with this summons, within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York.

    In case of your failure to appear or answer, judgment will be taken against you for the relief demanded in the complaint.

    The basis of venue is CPLR § 503.

Dated: New York, New York
       March 14, 2008

THACHER PROFFITT & WOOD LLP

By: _____
    Patrick J. Boyle, Esq.
    William M. Cooney, Esq.
    *Attorneys for Plaintiff*
    Two World Financial Center
    New York, New York 10281
    (212) 912-7400

NEW YORK
COUNTY CLERK'S OFFICE

MAR 14 2008

NOT COMPARED
WITH COPY FILE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| CITIGROUP GLOBAL MARKETS REALTY CORP., <br><br> Plaintiff, <br><br> -against- <br><br> ACCREDITED HOME LENDERS, INC., <br><br> Defendant. | Index No.: 600765/2008 <br> Date Filed: March 14, 2008 <br><br> **COMPLAINT** |

Plaintiff CITIGROUP GLOBAL MARKETS REALTY CORP. ("Plaintiff" or "Citigroup"), by and through its undersigned attorneys, Thacher Proffitt & Wood LLP, as and for its Complaint against Defendant ACCREDITED HOME LENDERS, INC. ("Defendant" or "Accredited") alleges as follows:

### NATURE OF ACTION

1. This is an action for breach of contract, unjust enrichment, fraudulent inducement and trespass to chattels in connection with Defendant's delivery of materially non-conforming and in some instances non-existent loans pursuant to an agreement to purchase a pool of mortgage loans. Plaintiff also complains of other wrongful actions by Defendant while servicing those loans.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to Section 140-b of the New York Judiciary Law, which provides that the Supreme Court of New York has general jurisdiction.

3. This Court has personal jurisdiction over Defendant pursuant to Section 302(a)(1) of the Civil Practice Law and Rules ("CPLR") because Plaintiff's causes of action arise from and

are related to Defendant's purposeful activity, business transactions and contracts to supply services in this State. By purposefully engaging in business activities within this State, Defendant sought to invoke the benefits and protection of New York law.

4. This Court has personal jurisdiction over Defendant pursuant to Section 302(a)(2) of the CPLR because Plaintiff's causes of action arise from and are related to Defendant's tortious acts within this State.

5. This Court has personal jurisdiction over Defendant pursuant to Section 302(a)(3) of the CPLR because Plaintiff's causes of action arise from and are related to Defendant's tortious acts without the State causing injury to Plaintiff and Plaintiff's property within this State, and Defendant (1) regularly does and solicits business in this State, (2) derives substantial revenue from services rendered in this State and from interstate commerce, and (3) expected or should reasonably have expected its tortious acts to have consequences in this State.

6. Venue is proper here, pursuant to Section 503 of the CPLR, because Plaintiff is a domestic corporation with its principal office in the County of New York, and as such is a resident of the County of New York.

## THE PARTIES

7. Plaintiff Citigroup is a New York corporation with its principal place of business at 390 Greenwich Street, New York, New York 10013.

8. Upon information and belief, Defendant Accredited is a California corporation with its principal place of business in San Diego, California and is authorized to transact business in the State of New York. Upon information and belief, Defendant Accredited has numerous offices located within this State for the purpose of transacting business within this State.

2

## FACTS

9. The parties have entered into a Mortgage Loan Purchase and Interim Servicing Agreement dated as of June 1, 2005, as amended (the "Loan Purchase Agreement"). The Loan Purchase Agreement defines Accredited as "Seller" and Citigroup as "Purchaser" and memorializes the terms and conditions according to which the parties agreed that Accredited would sell pools of mortgage loans to Citigroup.

10. Plaintiff and Defendant are also parties to a Confirmation Letter dated as of March 15, 2007 (the "Confirmation Letter" and, collectively with the Loan Purchase Agreement, the "Agreements"). The Confirmation Letter documents the parties' agreement for Defendant to sell to Plaintiff a pool of mortgage loans in the aggregate unpaid principal balance of approximately $2,769,000,000 (the "Mortgage Loan Pool"). A significant number of the mortgage loans and other assets transferred from Accredited to Citigroup pursuant to the Agreements are the subject of this action (the "Subject Assets" or "Assets"). The Subject Assets are governed by both of the Agreements, which are in turn expressly governed by New York law.

11. The Subject Assets were transferred by means of a closing that occurred on or about March 16, 2007.

12. The Subject Assets suffer from a myriad of fundamental deficiencies, and Citigroup has been seriously damaged as a result. The Subject Assets are in breach of the Agreements because they do not substantially conform to the characteristics of the Mortgage Loan Pool that was represented and warranted by Accredited to Citigroup when it sold the Mortgage Loan Pool to Citigroup in connection with the Confirmation Letter. Indeed, and as described further below, many of the Subject Assets were not mortgage loans at the time of transfer.

3

13. Determining which of the Assets in the Mortgage Loan Pool violate the Agreements is complicated by missing and materially incorrect documentation which accompanied Accredited's transfer of a great many of the Assets in the Mortgage Loan Pool. Many of the documents included in the Asset files transferred with the Assets to Citigroup are missing or defective, placing Accredited in breach of representations and warranties found in Sections 7.01 and 7.02 of the Loan Purchase Agreement. Among the types of important documents that are completely missing are title policies and mortgage notes. Additionally, many notes have missing and incorrect information.

14. The Agreements contemplate that Defendant would sell Plaintiff Mortgage Loans, as such term is defined in the Agreements. Many of the purported sales of Mortgage Loans to Plaintiff were in fact sales of an inferior asset which did not fit the loan characteristics called for by the terms of the Agreements.

15. Specifically, Defendant, through misrepresentation and/or fraudulent concealment, sold assets with rights and obligations different and less favorable than those rights and obligations that would accompany a Mortgage Loan. Indeed, in more than fifty (50) of the Subject Assets, the underlying Mortgage Loan no longer existed at the time of the purported sale to Plaintiff and therefore could not and should not have been sold to Plaintiff.

16. Defendant nonetheless represented to Plaintiff that the Subject Assets were existing and valid Mortgage Loans, and even presented fictitious mortgage and other loan documents in the file for each of the Subject Assets in a manner to lead Plaintiff to conclude that the Subject Assets were valid and existing Mortgage Loans and payments on those loans would be made. However, despite Defendant's representations to the contrary, in many instances no valid and enforceable Mortgage Loan existed, no payments were being made on account of the

4

supposed loan and, as a consequence, Plaintiff did not receive the right to receive income from those Mortgage Loans as had been bargained for when it purchased the supposed Mortgage Loans.

17. Indeed, Defendant's misrepresentation and/or fraudulent concealment extended past the actual sale of the Subject Assets. After the sale date, and while Defendant acted as the interim servicer on the Subject Assets, Defendant continued to represent to Plaintiff that the Subject Assets were valid and existing Mortgage Loans, even when they were not.

18. Defendant failed to disclose to Plaintiff that this was not the case. At the time of the sale, and for some time following the sale, Plaintiff was completely unaware that any of the Mortgage Loans it had purchased no longer existed, and had not existed when Plaintiff bought them. Standing between the borrower and Plaintiff, Defendant's role as interim servicer enabled it to keep up this subterfuge.

19. In at least one instance, Defendant's post-sale malfeasance went beyond perpetuating the false notion that dozens of Subject Assets were still Mortgage Loans and extended to interference with Citigroup's rights with respect to an Asset, prejudicially impairing the ability to foreclose.

20. Aside from the more than fifty (50) non-existent Mortgage Loans, numerous other of the Mortgage Loans existed, but suffered from such infirmities that they were rendered far less valuable assets than Plaintiff bargained for. Indeed, some of the Assets so conveyed to Plaintiff are without any value whatsoever. These infirmities, which Plaintiff was unaware of at the time of sale, include, but are not limited to:

> (a) the collateral securing the right to repayment had been lost prior to the sale to Plaintiff;

5

(b) the original borrower had sought to judicially enforce rescission of the Mortgage Loan prior to the sale to Plaintiff; and

(c) the Mortgage Loan had been prepaid in full prior to the purported sale to Plaintiff.

21. Defendant was obligated to disclose to Plaintiff the fact that the Subject Assets were afflicted by the foregoing and other material infirmities. In fact, based upon Defendant's access to and knowledge of the loan files, it would be unreasonable for Defendant to believe that the Subject Assets satisfied the Mortgage Loan Pool characteristics and should have been sold to Plaintiff in the first place.

22. The sale of many of the Subject Assets breached representations and warranties made by Accredited in Sections 7.01 and 7.02 of the Loan Purchase Agreement.

23. Citigroup has provided timely and adequate notice to Accredited of its breaches of its representations and warranties in the Loan Purchase Agreement with respect to the Subject Assets. By way of example, and without limitation, some of the myriad deficiencies in the Mortgage Loans and concomitant breaches of the Agreements are set forth below.

24. Accredited has breached the representations and warranties it made in the Loan Purchase Agreement by selling Citigroup Subject Assets which were defective because they were sold without any effective right to proceed against collateral.

25. Accredited has breached the representations and warranties it made in the Loan Purchase Agreement by selling Citigroup Subject Assets in which Accredited's second lien position had already been extinguished prior to the sale.

26. Accredited has breached the representations and warranties it made in the Loan Purchase Agreement by selling Citigroup Subject Assets which had already been paid in full at the time of sale.

27. Accredited has breached the representations and warranties it made in the Loan Purchase Agreement by selling Citigroup Subject Assets which were third liens, and not the second liens which they were represented to be at the time of sale.

28. Accredited has breached the representations and warranties it made in the Loan Purchase Agreement by selling Citigroup Subject Assets which were subject to other, unreleased mortgages which threatened the title transferred by Accredited to Citigroup at the time of the sale.

29. The sale of at least one of the Subject Assets breached the representations and warranties Accredited made in the Loan Purchase Agreement because at the time of sale no "Residential Dwelling," as defined in the Loan Purchase Agreement was on the property.

30. Accredited's breaches of its representations and warranties in the Loan Purchase Agreement are, in certain cases, the subject of actively litigated borrowers' claims concerning the Subject Assets involved. These include borrower claims for loan rescission due to circumstances surrounding the origination and closing of the loans (*e.g.*, claims for failure to provide required Truth in Lending Act disclosures, for excessive and/or illegal closing fees, and for outright fraudulent origination) – circumstances indicating breaches by Accredited of representations and warranties contained in the Loan Purchase Agreement.

31. Citigroup's remedy for breaches of most of the representations and warranties set forth in the Loan Purchase Agreement is an adjustment to the purchase price of any Mortgage Loans affected by such a breach. Pursuant to the Confirmation Letter, certain sums have been

7

held back from payment to Accredited by Citigroup to address the need to effect purchase price adjustments due to breaches of Accredited's representations and warranties affecting the value of one or more Mortgage Loans (the "Hold Back Amounts").

32. Citigroup has already notified Accredited of many of its representation and warranty breaches. To date, Accredited has failed to agree to the purchase price adjustments required to remedy those breaches, and has asserted a right to receive Hold Back Amounts to which it is not entitled.

33. Under Section 7.03 of the Loan Purchase Agreement, Accredited is obligated to indemnify Citigroup for any and all "losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting" to Citigroup "from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of the Seller's representations and warranties."

34. This indemnity is applicable to each of the Subject Assets.

35. Some of the Subject Assets were transferred to Citigroup in breach of Section 7.02 (xxxiv) of the Loan Purchase Agreement because their interest rates, points, fees paid in connection with their origination, loan terms, and/or issues with their documentation make them "high cost," "abusive," "predatory," or "high risk" (or similar designation) under applicable laws or regulations, and/or violative of same.

36. Citigroup's remedy for breaches of Section 7.02 (xxxiv) of the Loan Purchase Agreement (regarding "high cost" loans) is not merely a purchase price adjustment. Rather, Citigroup has an unlimited and express right to demand that Accredited repurchase any assets in breach of Section 7.02 (xxxiv) of the Loan Purchase Agreement.

37. As the Mortgage Loan Pool consists of Assets which were not contemplated by the Agreements, any contractual limitations on damages in the Agreements that might otherwise apply to Plaintiff's rights in connection with Subject Assets are of no relevance. The terms governing any contractual limitations reflect the parties' intent to limit damages necessary to correct for value with respect to specific breaches of representations and warranties and do not concern claims based upon the Mortgage Loans' very validity or existence.

38. Moreover, the Assets transferred to Plaintiff did not comply with the Mortgage Loan Pool characteristics, and it was only on the strength of these characteristics, represented to Plaintiff by Defendant, that Plaintiff was induced to agree to any contractual limitations upon damages. Defendant's non-compliance with the Mortgage Loan Pool characteristics did not concern technicalities or trivial matters. As set forth above, in many cases the Mortgage Loans themselves did not exist. In others, the collateral was compromised or extinguished.

39. Upon information and belief, Defendant knew or should have known of the material infirmities connected with the Subject Assets.

### FIRST CAUSE OF ACTION
*Breach of Contract*

40. Plaintiff repeats and realleges each and every allegation of each and every one of the preceding paragraphs as if fully set forth herein.

41. The Subject Assets do not substantially conform to the characteristics of the Mortgage Loan Pool that was represented and warranted by Accredited to Citigroup when it sold the Mortgage Loan Pool to Citigroup. The Subject Assets' deficient characteristics in breach of the Agreements include missing and defective documentation, lost or damaged collateral, prepaid loans, extinguished or compromised liens, and questionable and non-conforming originations, as well as other violations of specific representations and warranties.

9

42. When it sold the Subject Assets to Citigroup as part of the Mortgage Loan Pool, Accredited breached several of the representations and warranties it made in the Agreements.

43. Accordingly, Defendant Accredited is liable in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### *Unjust Enrichment*

44. Plaintiff repeats and realleges each and every allegation of each and every one of the preceding paragraphs as if fully set forth herein.

45. Defendant has impermissibly withheld and exercised unauthorized dominion over moneys exchanged for the Subject Assets, many of which are illusory Mortgage Loans with no value. Accordingly, the moneys transferred from Plaintiff to Defendant represent a benefit received by Defendants from Plaintiff without payment.

46. Retention of the benefit of the proceeds of the Subject Assets by Defendants would be unjust under the circumstances.

47. Accordingly, Defendant has been unjustly enriched by the moneys received in exchange for the Subject Assets and Defendant must immediately disgorge any and all such moneys, profits or avoidance of loss.

## THIRD CAUSE OF ACTION
### *Fraudulent Inducement by Misrepresentation*

48. Plaintiff repeats and realleges each and every allegation of each and every one of the preceding paragraphs as if fully set forth herein.

49. Upon information and belief, and in order to induce Defendant to agree to the sale of the Mortgage Loan Pool in accordance with the terms of the Confirmation Letter, Plaintiff misrepresented a number of material facts concerning the characteristics of the Subject Assets.

10

50. Upon information and belief, Defendant's misrepresentations were made knowingly, or with recklessness as to their truth.

51. Upon information and belief, Defendant's misrepresentations were made to deceive Plaintiff and to induce Plaintiff to enter into the Confirmation Letter and purchase the entirety of the Mortgage Loan Pool, including the Subject Assets.

52. Plaintiff reasonably relied upon Defendant's misrepresentations, and has been seriously damaged as a result of that reliance.

## FOURTH CAUSE OF ACTION
### *Fraudulent Inducement by Concealment*

53. Plaintiff repeats and realleges each and every allegation of each and every one of the preceding paragraphs as if fully set forth herein.

54. Upon information and belief, and in order to induce Defendant to agree to the sale of the Mortgage Loan Pool in accordance with the terms of the Confirmation Letter, Defendant deliberately and intentionally concealed from Plaintiff a number of material facts concerning the characteristics of the Subject Assets, which facts Defendant had a duty to disclose to Plaintiff.

55. Plaintiff reasonably relied upon the accuracy and completeness of Defendant's statements in connection with the sale of the Mortgage Loan Pool, and has been seriously damaged as a result of that reliance.

## FIFTH CAUSE OF ACTION
### *Trespass to Chattels*

56. Plaintiff repeats and realleges each and every allegation of each and every one of the preceding paragraphs as if fully set forth herein.

57. Defendant has intentionally interfered with Plaintiff's use and enjoyment of certain of Plaintiff's Mortgage Loans and their proceeds, without justification or consent, and with the result that there has been harm to Plaintiff's materially valuable interest in the Mortgage

11

Loans and/or their proceeds, and Plaintiff has been deprived of the use of the Mortgage Loans and/or their proceeds for a substantial time.

58. Accordingly, Defendant is liable for trespass to chattels, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment:

(1) holding Defendant liable for its breaches of the Agreements;

(2) declaring that Plaintiff is entitled to retain the entirety of the Hold Back Amounts;

(3) requiring Defendant to repurchase the Subject Assets at the purchase price paid for the Subject Assets and accrued and unpaid interest thereon, without regard to any Hold Back Amounts;

(4) awarding Plaintiff all of its damages, in an amount to be determined at trial;

(5) requiring Defendant to indemnify Plaintiff, in accordance with the provisions of Section 7.03 of the Loan Purchase Agreement, for "losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting" to Plaintiff "from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of the Seller's representations and warranties."

(6) holding that Defendant has been unjustly enriched;

(7) awarding Plaintiff its counsel fees, interest, and costs and disbursements of this action; and

(8)  awarding Plaintiff any other relief as this Court deems just and proper.

Dated: New York, New York
March 14, 2008

THACHER PROFFITT & WOOD LLP

By: _____
Patrick J. Boyle
William M. Cooney

Two World Financial Center
New York, NY  10281
(212) 912-7400